**Ralph S. GITZINGER and Loretta C. Gitzinger, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 18087.**

United States Court of Appeals
Sixth Circuit.

Dec. 12, 1968.

Hugh E. Wall, Jr., Dayton, Ohio, for appellant. C. Terry Johnson, Dayton, Ohio, on brief.

Jonathan S. Cohen, Atty., Dept. of Justice, Washington, D. C., for appellees; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Grant W. Wiprud, Attys., Dept. of Justice, Washington D. C., on brief; Robert M. Draper, U. S. Atty., Roger J. Makley, Asst. U. S. Atty., Dayton, Ohio, of counsel.

Before EDWARDS, McCREE, and COMBS, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from a judgment of the District Court determining that certain amounts received by appellees were taxable as gains from the sale of a capital asset rather than as ordinary income.

Ralph S. Gitzinger and his wife, Loretta, appellees, own a large tract of land lying on the boundary between Greene and Montgomery Counties in southern Ohio. This farm, which Loretta Gitzinger inherited in 1941, included a 35-acre limestone deposit. In April, 1955, appellees granted an option to purchase or lease their property to Universal Atlas Company, hereinafter referred to as Atlas, and permitted it to take core borings to determine the size, contour, and quality of the limestone deposit. After completion of the geological explorations, on October 15, 1955, the parties executed an agreement, which was captioned "LEASE", in which the parties were referred to as lessors and lessee, and in which the consideration from lessee was called a royalty. Both parties were represented by counsel, although the agreement was drafted by Atlas' attorneys.

In their federal income tax returns for the year 1955, and for 1959 through 1961, appellees reported the amounts which they received from Atlas as long term capital gains. The Commissioner determined that these payments were taxable as ordinary income, subject to allowance of the depletion deduction, and assessed tax deficiencies accordingly. Appellees paid the disputed taxes, filed refund claims which were disallowed, and sued for refunds in the District Court which rendered judgment in their favor.

This appeal requires us to determine whether the payments which appellees received under the agreement were taxable as gain from the sale of a capital asset or as ordinary income, subject to the allowance for depletion. This determination calls for an analysis of the contractual relationship between appellees and Atlas to ascertain whether the taxpayers retained an "economic interest" in the limestone to be removed.[1] The problem has been characterized as follows:

> There are various types of transactions which, although possibly constituting outright sales under local law, are nevertheless treated for income tax purposes as leasing arrangements, under which the proceeds received by the grantor, transferor or assignor (hereinafter included under the general term "lessor") are taxed as ordinary income subject to depletion and not as proceeds received on the sale or exchange of property. 4 Mertens, Federal Income Taxation § 24.23c (1966) (footnotes omitted).

An economic interest is retained by a taxpayer if he has: "(1) 'acquired, by investment, any interest in the * * * [minerals] in place,' and (2) secured by legal relationship 'income derived from the extraction of the * * * [minerals], to which he must look for a return of his capital.'" Commissioner v. Southwest Exploration Co., 350 U.S. 308, 314, 76 S.Ct. 395, 100 L.Ed. 347 (1956).[2] Neither local rules of law regarding the passage of title to minerals in place nor the form of the instrument of transfer is determinative. Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933).

Careful consideration of the substance of the contractual relationship between appellees and Atlas persuades us that

---

1. Although the economic interest concept was originally developed in cases involving oil and gas leases, it is also applicable in cases involving other types of mineral leases. Wood v. United States, 377 F.2d 300 (5th Cir. 1967), cert. denied, 389 U.S. 977, 88 S.Ct. 465, 19 L.Ed. 2d 472 (1967); Laudenslager v. Commissioner, 305 F.2d 686 (3rd Cir. 1962), cert. denied, 371 U.S. 947, 83 S.Ct. 501, 9 L.Ed.2d 497 (1963). Contra, Barker v. Commissioner, 250 F.2d 195 (2d Cir. 1957).

2. This definition has been adopted by the Treasury Department. Treas.Reg. § 1.611–1(b)(1) (1960).

the taxpayers retained an economic interest in the limestone. Therefore, the payments which they received under the agreement are taxable as ordinary income, subject to the allowance for depletion which is designed to permit the recovery of their capital investment.

■ Paragraph 2(a) of the agreement provides that appellees were to receive "tonnage royalty payments", the amount of which was to be determined by a sliding scale geared to the quantity of limestone extracted annually by Atlas.[3] Consequently, unless other provisions of the agreement compel a different conclusion it is clear that appellees secured by legal relationship income derived from the extraction of the limestone to which they must look for the return of their capital and, therefore, they have retained an economic interest in the limestone within the meaning of the test enunciated by the Supreme Court in Commissioner v. Southwest Exploration Co., supra. See Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325 (1932); Schreiber v. United States, 382 F.2d 553 (7th Cir. 1967); Rabiner v. Bacon, 373 F.2d 537 (8th Cir. 1967); Wood v. United States, 377 F.2d 300 (5th Cir. 1967), cert. denied, 389 U.S. 977, 88 S.Ct. 465, 19 L.Ed.2d 472 (1967); Freund v. United States, 367 F.2d 776 (7th Cir. 1966); and Laudenslager v. Commissioner, 305 F.2d 686 (3rd Cir. 1962), cert. denied, 371 U.S. 947, 83 S. Ct. 501, 9 L.Ed.2d 497 (1963).[4]

■ We proceed to examine the balance of the agreement to determine whether it is inconsistent with this conclusion. Paragraph 2(d) provides, in part, that appellees were to receive a "minimum annual royalty" of $10,000 regardless of the quantity of limestone removed. That paragraph also specifies that any payments made by Atlas under this provision which exceeded the amount due for limestone actually removed would be credited against amounts owed in excess of the minimum annual royalty in subsequent years. It is evident that this provision does not negate the retention of an economic interest. Wood v. United States, supra; Schreiber v. United States, supra; Freund v. United States, supra; Laudenslager v. Commissioner, supra. See Bankers Pocahontas Coal Co. v. Burnet, supra. In *Wood* the Court stated, with regard to a minimum royalty provision similar to that in the instant case:

Under the economic interest test, the critical consideration is whether payment is dependent upon extraction * * *.

[T]he courts have stated many times that a minimum royalty, such as that present in this case, is merely an advancement for future payments in the form of a guarantee and does not render payment dependent on a factor other than extraction or production. 377 F.2d at 306, 307.

■ Under this rationale the $20,000 "advance on minimum annual royalties" provided for in Paragraph 2(b)[5] of the

3. Paragraph 2 of the agreement provides, in part:
    2. Lessee, in consideration of the aforesaid grant and conveyance, hereby covenants and agrees with the Lessors as follows:
    (a) To pay the Lessors for each net ton of limestone removed from said property by the Lessee a royalty based on the following schedule:
    (1) Ten cents per net ton for the first 100,000 net tons removed from the premises in any lease year;
    (2) Eight cents per net ton for the next 100,000 net tons removed from the premises in any lease year, and

    (3) Six cents per net ton for all net tons in excess of 200,000 net tons removed from the premises in any lease year.

4. A discussion of this principle appears in Wood v. United States, supra, 377 F.2d at 306, n. 16.

5. Paragraph 2(b) of the agreement provides:
    On or before the date of this Agreement, Lessee has paid to Lessors the sum of $20,000.00, receipt whereof is hereby acknowledged by Lessors, said sum to be considered as an advance on minimum annual royalties and tonnage

agreement is also consistent with appellees' retention of an economic interest in the limestone since, according to the terms of that paragraph, subsequent annual royalty payments were to be charged against this advance until it was offset.[6]

Paragraph 2(e) gives Atlas the option to terminate the agreement after it has removed or paid for one million net tons of limestone. Appellees contend that, since Atlas was thereby unconditionally obligated to remove at least this quantity of limestone, taxpayers retained no economic interest to this extent. If Atlas' obligation to remove one million tons were, in fact, unconditional, this contention might have merit. See Gowans v. Commissioner, 246 F.2d 448 (9th Cir. 1957). This, however, is not the case. Paragraph 9 provides, in part, that Atlas may terminate the agreement on thirty days notice if any public authority should restrict, limit or prohibit the contemplated removal operations in a manner which Atlas might conclude would materially interfere with or hamper them. According to the testimony of Atlas' plant manager,[7] the possibility of such regulation was not remote and, in fact, was responsible, in part, for Atlas' decision to lease rather than to purchase appellees' property. Since the one million ton minimum was not unconditional, it does not negate appellees' retention of an economic interest in the limestone deposit. Laudenslager v. Commissioner, supra. See also Wood v. United States, supra, 377 F.2d at 307, n. 19.

In *Laudenslager* the taxpayer had agreed to permit a road building contractor to remove from his property the quantity of earth fill required for the construction of a nearby section of highway. The agreement provided that the taxpayer was to receive five cents per cubic yard of earth fill taken, and that a minimum quantity of 400,000 cubic yards was to be removed. However, the Court observed that this minimum would be reduced if the New Jersey Highway Authority lowered the contractor's earth fill requirements. Relying in part on the fact that the contractor was not unconditionally required to remove a minimum quantity of earth fill, the Court held that his payments to the taxpayer were taxable as ordinary income and not as gains from the sale of a capital asset.[8]

In determining that the payments received by appellees should be treated as gains from the sale of a capital asset, the District Court relied on Linehan v. Commissioner, 297 F.2d 276 (1st Cir. 1961). In that case the excavation company had *unconditionally* contracted to remove from the taxpayer's land *all* the sand and gravel above a certain level.

Appellees contend that the District Court's finding that they intended to sell their limestone deposit for the greatest available remunerative return requires the conclusion that they retained no economic interest therein. We do not agree. It is the intent of *both* parties, as evidenced by their agreement, which, in the absence of fraud, must be considered in determining whether an economic interest has been retained. Appellees rely on Commissioner v. Remer, 260 F.2d 337 (8th Cir. 1958), Crowell Land and Min-

royalties to accrue hereafter to Lessors. It is understood and agreed that minimum annual royalties and tonnage royalties hereafter accruing to Lessors shall be first applied in satisfaction of said advanced royalties and no payments of minimum annual royalties or tonnage royalties shall be made to the Lessors until the amount of such minimum annual royalties and tonnage royalties exceeds the amount of royalties advanced by the Lessee to the Lessors as aforesaid.

6. In fact, however, this advance was offset only by the tonnage in excess of 100,000 tons each year and was eventually offset entirely in the early 1960's.

7. This testimony appears in the Appendix to Appellant's Brief at 47a–49a.

8. The Court also relied on the fact that the contractor was not required to take any earth fill which did not meet the specifications of the New Jersey Highway Authority. This would not affect the 400,000 cubic yard minimum, however, unless that quantity of fill was not present on the taxpayer's property.

eral Corp. v. Commissioner, 242 F.2d 864 (5th Cir. 1957) and Barker v. Commissioner, supra. But in those cases the Courts looked to the intent of both parties and not, as appellees contend, to the intent of the landowner alone. Furthermore, in *Remer*, the taxpayer had unconditionally conveyed his entire interest in the lease he held, and under no circumstances could it revert to him after it had been conveyed. In addition, the Court relied in part on the fact that large initial payments of fixed sums were received by the taxpayer as consideration for the conveyance. Neither of these factors is present in the instant case. We have already pointed out, see note 2, supra, that in *Barker* the Court rejected the economic interest test which we have held applicable in the instant case. *Crowell* was disapproved in Wood v. United States, supra, a later decision of the same Court.

The judgment of the District Court is reversed and the case is remanded for proceedings consistent with this opinion.