W. W. OLIVER, Sr., Individually and as Administrator of the Estate of Alice M. Oliver, Appellee,

v.

UNITED STATES of America, Appellant.

No. 12710.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 6, 1969.

Decided March 27, 1969.

Jonathan S. Cohen, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Grant W. Wiprud and Marian Halley, Attys., Dept. of Justice, and C. Vernon Spratley, Jr., U. S. Atty., and Alfred D. Swersky, Asst. U. S. Atty., on brief), for appellant.

Montgomery Knight, Jr., Norfolk, Va. (Doumar, Pincus, Anderson & Knight, Norfolk, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

In 1945 farmer W. W. Oliver bought a piece of country property, the 41–acre "Bailey Tract," for the purpose of developing it into residential homesites. During January of 1960 he agreed to sell "all sand, gravel and other suitable and marketable materials" in a pit on the tract of approximately seven acres to Tidewater Sand Company. The instrument provided that Tidewater was to have two years and four months to remove all of the sand from the pit in consideration for which it was to pay to Oliver eight cents per short ton of materials removed by it for sale. It was agreed that Tidewater was to render Oliver a statement of all materials sold at the end of each month and was to pay Oliver by the tenth of each succeeding month "for all materials sold." It was provided that Tidewater could cancel the contract anytime it found sale of the materials unprofitable. Oliver could cancel at the end of the two-year four-month period if he had given 90 days' written notice and could under the same conditions of notice cancel anytime thereafter. Under the contract 250,000 tons of sand and gravel were removed and paid for, which amounted to all but about 200 tons of the usable materials in the pit. Oliver reported the proceeds of the contract as capital gains.

The question here on appeal is whether the proceeds received by Oliver were (1) ordinary income subject to the depletion allowance as the government contends, or (2) capital gain from a sale as the taxpayer contends and the district court held, 280 F.Supp. 823 (E.D.Va.1967). Because Oliver retained an "economic interest" in the minerals in place, Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933), we reverse the district court and hold that the proceeds of the contract were ordinary income to Oliver subject to the depletion allowance.

The concept of "economic interest" first appeared in Palmer v. Bender, *supra,* and the two-pronged test there announced now appears as a part of the Treasury Regulations:

> An economic interest is possessed in every case in which the taxpayer has [1] acquired by investment any interest in mineral in place * * * and [2] secures, by any form of legal relationship, income derived from the extraction of the mineral * * *, to which he must look for a return of his capital.

Treas.Reg. § 1.611–1(b) (1) (1960).

■ The first part of the test assumes importance where a taxpayer

claims proceeds of a transaction are ordinary income thus entitling him to use the depletion deduction to recover his capital investment. *See, e. g.,* Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897 (1938); Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903 (1938); Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956). The second part of the test is critical in situations like the present one where the taxpayer claims to have divested himself of his economic interest by means of a capital sale and seeks to treat the proceeds as long term capital gain. Whether taxpayer is entitled to capital gain treatment or the depletion allowance depends on whether or not he has retained an "economic interest" in the mineral in place. A taxpayer claiming that he has retained an economic interest, entitling him to the advantages of the depletion deduction must show that he looks *solely* to extraction of the mineral for a return of his capital. Commissioner of Internal Revenue v. Southwest Exploration Co., *supra;* see Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277 (1940); Helvering v. Elbe Oil Land Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904 (1938). Conversely, where a taxpayer can look *only* to extraction for a return of his capital, it cannot be said that he has divested himself of his economic interest in the mineral in place. Wood v. United States, 377 F.2d 300 (5th Cir. 1967), *cert. denied,* 389 U.S. 977, 88 S.Ct. 465, 19 L.Ed.2d 472 (1967).

The economic interest concept was enunciated and refined primarily in cases dealing with gas and oil depletion allowances, but there is no readily apparent basis for formulating a different rule in hard mineral cases. Gitzinger v. United States, 404 F.2d 191, 193 n. 1 (6th Cir. 1968); United States v. White, 401 F.2d 610, 614 (10th Cir. 1968); Wood v. United States, *supra* at 304 n. 7.

The terminology used by the parties in framing their agreement does not determine whether the taxpayer retained an economic interest in the minerals in place. It is axiomatic that the tax consequences of the transaction are to be governed by substance, not form. Royalton Stone Corp. v. Commissioner of Internal Revenue, 379 F.2d 298 (2d Cir. 1967); Anderson v. Helvering, *supra;* Palmer v. Bender, *supra.* More persuasive than the form of the transaction is the method by which Oliver was compensated for the sand and gravel taken from his land. The agreement provided that Oliver was to be paid eight cents per ton of salable material *removed.* The provision allowing Tidewater to cancel in the event that the materials were not salable at a reasonable profit provided further that Tidewater was to be liable for salable materials already removed. The economic interest concept focuses on the taxpayer's dependence on extraction for a return of his capital, and Oliver is clearly so dependent here: if no materials had been removed, Oliver would have received no payment.

Significantly, Oliver was in fact paid only for those materials which Tidewater *sold.* Although Oliver was not directly involved in Tidewater's sale of the materials removed, he was interested in Tidewater finding a profitable market to insure sustained income to himself from the contract and this suggests that the arrangement between Oliver and Tidewater more resembled a lease or a licensing arrangement than an absolute sale of the minerals in place. That the agreement here did not effect an absolute sale of the materials in the pit to Tidewater is further evidenced by Oliver's testimony before the district court that Ferrell Brothers, another contractor who had worked the pit prior to the Tidewater agreement, continued to work it for a short time after Tidewater had begun its operations. The only property Oliver transferred was the right to extract sand and gravel and nothing

more.[1] We think taxpayer did not divest himself of his economic interest in the minerals in place.

 The taxpayer and the district court in its memorandum opinion rely heavily on Linehan v. Commissioner of Internal Revenue, 297 F.2d 276 (1st Cir. 1961), and Crowell Land and Mineral Corp. v. Commissioner of Internal Revenue, 242 F.2d 864 (5th Cir. 1957). In Crowell, particular stress was laid on the fact that the agreement was labeled "Contract of Sale" and contained such words as vendee, vendor, sold and conveyed. But such words are mere labels, and terminology is not controlling. The test is whether taxpayer retained the right to share in production. Palmer v. Bender, supra, 287 U.S. at 555–556, 53 S.Ct. 225. Further, the Fifth Circuit in a later decision, Wood v. United States, supra, 377 F.2d at 311, specifically disapproved Crowell.

"In [Linehan] the excavation company had unconditionally contracted to remove from the taxpayer's land all the sand and gravel above a certain level," Gitzinger v. United States, supra, 404 F.2d at 195, whereas here the agreement was conditioned on Tidewater's profitable sale of the materials removed, and because of that condition, it was not clear that Tidewater was obligated to remove anything at all. Linehan may be distinguishable on that basis. If it is not, we decline to follow it. Instead, we join eight other circuits in holding that in a fact situation such as this one the transfer of operating rights for hard minerals at a fixed unit price of materials removed is not, for tax purposes, a sale of

capital assets. Gitzinger v. United States, supra; United States v. White, supra; Hair v. Commissioner of Internal Revenue, 396 F.2d 6 (9th Cir. 1968); Schreiber v. United States, 382 F.2d 553 (7th Cir. 1967); Royalton Stone Corp. v. Commissioner of Internal Revenue, supra; Wood v. United States, supra; Rabiner v. Bacon, 373 F.2d 537 (8th Cir. 1967); Freund v. United States, 367 F.2d 776 (7th Cir. 1966); Laudenslager v. Commissioner of Internal Revenue, 305 F.2d 686 (3d Cir. 1962).

The judgment of the district court is Reversed.

---

1. It may be argued that Oliver transferred to Tidewater the right to mine sand and gravel in his pit to exhaustion and that this right conferred the economic interest in this transaction to Tidewater. Merritt v. Commissioner of Internal Revenue, 330 F.2d 161 (4th Cir. 1964); Elm Development Co. v. Commissioner of Internal Revenue, 315 F.2d 488 (4th Cir. 1963); United States v. Stallard, 273 F.2d 847 (4th Cir. 1959). Initially, we note that more than one taxpayer may own an economic interest in minerals in place.

It is not an either-or proposition. See, e. g., Commissioner of Internal Revenue v. Southwest Exploration Co., supra. But, going to the heart of the argument, we find that the Supreme Court in reversing Merritt v. Commissioner of Internal Revenue, supra, held that the right to mine to exhaustion, without more, does not constitute an economic interest. Paragon Coal Co. v. Commissioner of Internal Revenue, 380 U.S. 624, 85 S.Ct. 1207, 14 L.Ed.2d 116 (1965).