JAMES ISKE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Iske v. Commissioner
Docket No. 4311-77.
United States Tax Court
T.C. Memo 1980-61; 1980 Tax Ct. Memo LEXIS 522; 39 T.C.M. (CCH) 1161; T.C.M. (RIA) 80061; March 5, 1980, Filed James Iske, pro se. J. Anthony Hoefer,for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioner's *524 income tax: Year
Deficiency
1970
$8,753.83
1971
4,037.14
1972
1,250.91
Due to concessions by petitioner, the issues remaining for decision are: 1. Whether petitioner realized taxable gain in 1970 or 1971 from the grant of easements pursuant to condemnation proceedings. 2. Whether unreimbursed legal, appraisal or witness fees incurred by petitioner in connection with the condemnation of easements across his land are deductible in 1970 nd 1971 as ordinary and necessary business expenses. 3. Whether interest income received by petitioner in 1970 and 1971 as part of condemnation awards is tax exempt. 4. Whether petitioner's sales of dirt, sand and gravel in 1970, 1971, and 1972 generated ordinary income or capital gains. 5. Whether petitioner is entitled to percentage depletion for 1970, 1971 and 1972 in excess of amounts allowed by respondent. 6. Whether petitioner is entitled to depreciation deductions as claimed on his 1970, 1971 and 1972 income tax returns. 7. Whether petitioner is entitled to business expense deductions for 1971 and 1972 in excess of amounts allowed by respondent. *tFINDINGS OF FACT All of the facts have been stipulated *525 and are found accordingly. At the time of filing his petition, James Iske was a resident of Omaha, Nebraska. Condemnation Awards
On August 9, 1967, the Omaha Public Power District ("OPPD") [1] instituted eminent domain proceedings in the County Court of Sarpy County, Nebraska. OPPD sought to acquire a right-of-way easement across land owned by petitioner in Sarpy County. The easement was sought for the purpose of constructing, operating and maintaining electrical transmission lines. The Sarpy County Court granted OPPD the easement and awarded petitioner $94,870 in damages. This amount was deposited with the court on September 13, 1967. On May 17, 1968, $25,000 of the award was released to petitioner by the court. On October 16, 1967, petitioner appealed the Sarpy County Court decision to the District Court of Sarpy County. The District Court judgment held that OPPD was liable to petitioner as follows (plus interest until paid): Damages to land by the
easement condemned
$135,000
Attorney's fees
13,500
Expert witness fees
1,500 [2]
Total
$150,000
*526 The District Court judgment was affirmed by the Nebraska Supreme Court on July 20, 1970. [3] On August 14, 1970, petitioner received a check for $145,268.49 in full satisfaction of the District Court's judgment of $150,000 plus interest of $20,268.49 to August 13, 1970, taking into consideration the $25,000 previously released to petitioner. Petitioner's land in Sarpy County from which OPPD's easement was taken included the following: The Southeast Quarter (SE 1/4) of the Southeast Quarter (SE 1/4) of Section Twenty (20) and the East One-half (E 1/2) of the Northeast Quarter (NE 1/4); Tax Lots 6A, 6C and 6C1 of Section Twenty-nine (29), Township thirteen (13) North, Range thirteen (13) east of the 6th P.M., in Sarpy County, Nebraska. The easement area condemned was 38.3 acres described as follows: A strip of land 400 feet in width, 325 feet East of and parallel to and 75 feet West of and parallel to the following described reference line: Beginning at a point on the South *527 line of said Section twenty-nine (29), 975 feet West of the Southeast corner thereof; thence in a Northwesterly direction to a point of turning located 1,227 feet West of and 4,420 feet South of the Northeast corner thereof, also-- A strip of land 300 feet in width, 225 feet East of and parallel to and 75 feet West of and parallel to the following described reference line: Beginning at the above stated point of turning and continuing in a Northerly direction to a point of turning located 1,252 feet West of and 753 feet South of the aforesaid Northeast corner; thence in a Northwesterly direction to a point of leaving located on the North line of the South One-half (S 1/2) of the Southeast Quarter (SE 1/4) of said Section twenty (20), 1,363 feet West of the Northeast corner thereof. On August 10, 1967, OPPD instituted a second eminent domain proceeding in the County Court of Cass County to acquire a right-of-way easement across land owned by petitioner in Cass County. Again, OPPD wished to acquire the easement for the purpose of constructing, operating and maintaining electrical transmission lines. The Cass County Court awarded petitioner $35,000 damages plus interest of $8,716. *528 The award was paid in 1971. Petitioner incurred $15,128.85 of unreimbursed legal, appraisal and witness expenses in connection with this eminent domain proceeding. Petitioner's land in Cass County from which OPPD's easement was taken is described as follows: The Northeast Quarter (NE 1/4) of the Northeast Quarter (NE 1/4) of Section Thirty-two (32), Township thirteen (13) North, Range thirteen (13) east of the 6th P.M., in Cass County, Nebraska. The specific easement that OPPD acquired from petitioner during this proceeding is described as follows: A strip of land 400 feet in width, 325 feet East of and parallel to and 75 feet West of and parallel to the following described reference line: Beginning at a point 365 feet West of the East line of said Section thirty-two (32) and 3,260 feet North of the South line thereof, thence in a Northwesterly direction to a point of leaving located on the North line thereof, 975 feet West of the Northeast corner thereof. On his 1970 return, petitioner reported the $20,268.49 interest income received as part of the Sarpy County easement award. On his 1971 return, petitioner reported the $8,716 interest income received as part of the *529 Cass County easement award. Petitioner did not recognize any capital gain income in either 1970 or 1971 from the transfers of the easements to OPPD. In his statutory notice, respondent determined that petitioner realized the following long term capital gain in 1970 on the transfer of the Sarpy County land to OPPD: Award for land
$135,000
Less: Basis (38.3 acres at $191)
$ 7,315
Unreimbursed expenses [4]
35,000
(42,315)
Long term capital gain
$ 92,685
respondent determined that petitioner realized the following long term capital gain in 1971 on the transfer of the Cass County land to OPPD: Award for land
$35,000.00
Less: Basis
$ 600.00
Unreimbursed legal,
witness and appraisal
expenses
15,128.85 [5]
(15,728.85)
Long term capital gain
$19,271.15
*530 No part of the awards were for severance damages. Sales of Dirt, Sand and Gravel
On March 24, 1970, petitioner entered into a contract to sell dirt, sand and gravel to Hartford San and Gravel Co. ("Hartford"). Pursuant to this contract, petitioner agreed to sell Hartford a specified amount of dirt, sand and gravel from a portion of his Sarpy County land. Pertinent parts of the contract provided: 4. Seller hereby grants to Buyer the option to buy during 1970 and the first five months of 1971 as much as, but not more than 100,000 tons of sand and gravel at a price of eight cents per ton. Fully warranted title to such sand and gravel material shall be deemed to pass to Buyer upon removal of the material from the above-described real estate. * * *
7. Buyer shall have no right to sell, remove or cause to be removed any dirt or waste sand from the premises, except that Buyer may purchase as much as, but not more than 100,000 tons of dirt or waste sand at five cents per ton. * * *
19. This agreement for the purchase of dirt, sand, gravel and sand and gravel, if not terminated earlier, shall terminate on June 1, 1971. After termination, Buyer shall have an *531 additional period of six months during which Buyer may complete the purchase of materials already processed, but remaining on the premises, on the same terms as hereinabove specified, provided that in no event shall the total number of tons of material removed exceed the amounts specified in paragraphs 4 and 7 above. Buyer or its successors may also, during said six month period, and so long as not in default as to payments due under this contract, remove any and all equipment, including both temporary and permanent structures, from the above premises. After December 1, 1971, all ownership in equipment, structures and material, both processed and unprocessed remaining on the premises described above, shall be considered as abandoned to the Seller by the Buyer and its successors, and rights conferred on Buyer or its successors under this Contract of Sale shall be considered as terminated. The contract did not require Hartford to extract a minimum amount of minerals. The following table reflects the amount of dirt, sand and gravel income reported by petitioner as ordinary income and the amount actually received for material sold to Hartford during the years in issue: Amount
Actual Year
Reported
Sales
1970
$ 3,747.00
$ 4,346.92
1971
3,769.00
3,450.00
1972
19,309.00
18,982.86
*532 Petitioner did not claim any depletion deductions with respect to his sales of minerals during the years in issue. Respondent determined that petitioner was entitled to depletion deductions in connection with these sales of $217.35 for 1970, $172.50 for 1971 and $932.65 for 1972. Depreciation Deductions
The following tables reflect the amount of depreciation claimed by petitioner for 1970, 1971 and 1972, the amount allowed by respondent and the resulting adjustments proposed by respondent: 1970
Amount
Proposed Item
Claimed
Allowed
Adjustment
Farm, buildings
and equipment
$2,294.00
$0
$2,294.00
Truck
500.00
500.00
0
Two Houses
700.00
0
700.00
Total
$3,494.00
$500.00
$2,994.00
1971
Amount
Proposed
Item
Claimed
Allowed
Adjustment
Farm buildings
and equipment
$3,010.00
$0
$3,010.00
Truck
500.00
500.00
0
Car
460.00
0
460.00
Calculator
0
35.10
(35.10)
Total
$3,970.00
$535.10
$3,434.90
1972
Amount
Proposed
Item
Claimed
Allowed
Adjustment
Farm buildings
and equipment
$3,010.00
$0
$ 3,010.00
Truck
500.00
0
500.00
Car
460.00
0
460.00
Calculator
0
35.10
(35.10)
Total
$3,970.00
$35.10
$3,934.90
*533 Business Expenses
In 1971 petitioner claimed the $351 cost of a calculator as a business expense. Respondent determined that the calculator was a capital asset and, in his notice of deficiency, disallowed the $351 business expense deduction. [6]
The following table reflects Schedule F business expenses claimed by petitioner for 1972 and the amount allowed by respondent: Item
Amount Claimed
Amount Allowed
Labor and repairs
$ 1,005.00
$ 1,195.50
Feed
416.00
416.00
Seed
573.00
460.00
Fertilizer
1,603.00
1,839.52
Machine hire
581.00
178.00
Supplies
1,597.00
731.86
Veterinary
63.00
592.72
Gasoline
483.00
114.44
Storage
638.00
678.93
Taxes
5,568.00
5,321.39
Insurance
143.00
186.20
Utilities
597.00
299.44
Freight, travel, management
2,197.00
1,756.00
Total
$15,435.00 [7]
$13,770.00
Respondent disallowed $1,665 ($15,435 minus $13,770) of the amount claimed. OPINION Condemnation Awards
The first issue is whether petitioner realized taxable gain in 1970 and 1971 from *534 the grant of easements across his Sarpy County and Cass County land. More specifically, the issue is whether petitioner's basis for determining gain on the condemnation sales of easements in 1970 and 1971 should include his basis for the property beyond the immediate area to which the easements apply. Petitioner contends that the basis used in computing his 1970 and 1971 gains should reflect his entire interest in Sarpy and Cass County land from which the easements were taken. On the other hand, respondent contends that in determining petitioner's gain on the sale of the easements, only petitioner's basis allocable to the immediate acreage covered by the easements may be utilized. We agree with respondent. Petitioner relies on I.T. 2621, XI-I C.B. 67, promulgated in 1932, wherein a taxpayer sold an easement across 160 acres of land for the construction, maintenance, operation and repair of power transmission lines while reserving for himself the right to use the land for cultivation. On these facts, respondent ruled that it determining gain or loss the amount received for the sale of the easement should be applied against the cost of the total tract of land from which the easement *535 was carved. On December 23, 1968, respondent declared I.T. 2621 obsolete. Rev. Rul. 68-661, 1968-2 C.B. 607. [8] Nonetheless, petitioner argues that I.T. 2621 is dispositive of his case because the condemnation proceedings were instituted before issuance of Revenue Ruling 68-661. While often helpful in interpreting a statute, a revenue ruling is not binding on the Secretary or the courts; a ruling does not have the effect of a regulation or a Treasury Decision. Stubbs, Overbeck & Associates v. United States,445 F. 2d 1142, 1146-1147 (5th Cir. 1971); Browne v. Commissioner,73 T.C. No. 56 (Jan. 22, 1980), concurring opinion. Since at least 1945, it has been this Court's position that in computing gain or loss from the disposition of part of an interest in property, a taxpayer must utilize only his basis allocable *536 to that portion, except when apportionment of basis is impossible or impractical. Blum v. Commissioner,5 T.C. 702, 709 (1945). In 1947 we applied this principle to the determination of the gain or loss realized upon the condemnation of an easement. See Inaja Land Co., Ltd. v. Commissioner,9 T.C. 727 (1947). We have recently reaffirmed our position in Fasken v. Commissioner,71 T.C. 650 (1979), which involved the 1974 grant of four easements across a ranch. In holding that the gain realized should be computed by applying the consideration the taxpayers' received against that portion of their adjusted basis for the ranch which was allocable to the acreage covered by the easements, we relied primarily on section 1.61-6(a), Income Tax Regulations[9] and Inaja Land Co., Ltd. v. Commissioner, supra.
Section 1.61-6(a) provides in part that: When a part of a larger property is sold, *537 the cost or other basis of the entire property shall be equitably apportioned among the several parts, and the gain realized or loss sustained on the part of the entire property sold is the difference between the selling price and the cost or other basis allocated to such part. The sale of each part is treated as a separate transaction and gain or loss shall be computed separately on each part. Thus, gain or loss shall be determined at the time of sale of each part and not deferred until the entire property has been disposed of. Thus, in order to compute the gain or loss from disposition where property is acquired for a lump sum and a portion of that property is disposed of separately, an allocation of the cost or other basis to the several parts must be made. Only if an apportionment of the basis is impossible or impractical may the selling price be credited against the basis for the entire property. Inaja Land Co., Ltd. v. Commissioner,supra. Otherwise, the gain or loss realized is the difference between the selling price of the portion of the property sold and *538 the cost or other basis allocated to that part. Inaja Land Co., Ltd. v. Commissioner,supra;Blum v. Commissioner,supra.[10]
The basis of the property and whether an allocation of that basis to the property affected by the easement cannot be made are issues of fact on which petitioner has the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure; Fasken v. Commissioner,supra. *539 Petitioner contends that he received the land, from which the easements were taken, by inherintance from his parents. He further contends that the fair market value of this property on the date of his parents' respective deaths was $161,285.95. Petitioner argues that $161,285.95 is his basis in the land in issue and that the full $161,285.95 should be used to compute the gain or loss realized on the condemnations. Although petitioner submitted copies of his parents' estate tax returns, Forms 706, showing he was the beneficiary of various real estate interests in Sarpy County, petitioner did not explain how he derived the alleged $161,285.95 basis for the specific property interests from which the Sarpy County and Cass County easements were taken. It is not even clear whether petitioner received by devise the property interests from which the easements were taken. The property descriptions on the estate tax returns differ from those cited in the condemnation proceedings. Moreover, petitioner did not present any evidence showing that a portion of his basis could not be allocated to the property affected by the easement. Accordingly, we sustain respondent's determination. *540 The next issue is whether the unreimbursed legal, appraisal or witness fees incurred by petitioner in 1970 and 1971 in connection with the condemnation proceedings are deductible as ordinary and necessary business expenses under section 162. Respondent allowed petitioner to capitalize these expenses in computing petitioner's gains from the Sarpy County and Cass County condemnation awards. Petitioner, however, contends that the fees represent ordinary and necessary business expenses deductible under section 212. When legal and related expenses incurred in connection with condemnation proceedings are incurred for the purpose of increasing the taxpayer's award for the loss of his property, the expenses are capital expenditures. Soelling v. Commissioner,70 T.C. 1052, 1055 (1978); Casalina Corp. v. Commissioner,60 T.C. 694, 703 (1973), affd. 511 F. 2d 1162 (4th Cir. 1975). Here, petitioner incurred the expenses in his attempt to increase the award for the property; therefore, we hold for respondent on this issue. The next issue for decision *541 is whether interest income received in 1970 and 1971 as part of the condemnation awards is tax exempt under section 103. Petitioner previously reported interest income of $20,268.49 and $8,716 received respectively in 1970 and 1971 in connection with his condemnation awards. Petitioner now contends that this interest is exempt income under section 103. Generally, section 103(a) excludes from gross income interest received on obligations of any state, territory or possession of the United States, or any political subdivision of the foregoing. This exemption applies only to interest on certain governmental "obligations." However, interest received as part of a condemnation award is not interest on an obligation within the meaning of section 103(a). Williams Land Co. v. United States, 90 Ct. Cl. 499, 31 F. Supp. 154 (1940). Accordingly, petitioner is not entitled to exempt the interest received from his gross income. Petitioner alternatively argues that since the interest was received in conjunction with the condemnation award, it should be given capital gain treatment. *542 However, where money is paid as indemnification for delay in payment of a condemnation award after property has already been condemned it is taxable as ordinary income. See Kieselbach v. Commissioner, 317 U.S. 399 (1943). Petitioner has not presented any evidence demonstrating that the sums in issue were other than compensation for delay in payment of the condemnation awards. Accordingly, we hold that petitioner must include the $20,268.49 and $8,716 interest received in 1970 and 1971 as ordinary income. Sales of Dirt, Sand and Gravel
On March 24, 1970, petitioner contracted to sell dirt, sand and gravel from a portion of his Sarpy County property to Hartford Sand and Gravel Co. ("Hartford"). Under this contract Hartford had the option to buy as much as (but not more than) 100,000 tons of sand and gravel at eight cents per ton and as much as (but not more than) 100,000 tons of dirt at five cents per ton. The contract expired on June 1, 1971, if not terminated earlier. After termination Hartford had an option for six months to complete the purchase of sand and gravel already processed but remaining on the premises. Petitioner received payments for materials *543 sold to Hartford under this contract of $4,346.92 in 1970, $3,450 in 1971 and $18,982.86 in 1972. Petitioner contends that these sales generated income taxable as long term capital gains. On the other hand, respondent contends that petitioner retained an economic interest in the property and thus the sale of minerals generated ordinary income. We agree with respondent. Whether a taxpayer must report income from the sale of sand and gravel as ordinary income or capital gain depends on whether or not he has retained an economic interest in the minerals in place. Oliver v. United States, 408 F.2d 769, 771 (4th Cir. 1969). If the taxpayer retains an economic interest, he must report his sales income as ordinary income, but is entitled to a deduction for depletion. Sec. 611; Oliver v. United States,supra.The test in determining whether a taxpayer possesses an economic interest is (1) whether the taxpayer has acquired by investment an interest in the minerals in place and (2) whether he looks to the income from the extraction of the materials for a *544 return of his investment. Sec. 1.611-1(b)(1), Income Tax Regs.; Palmer v. Bender, 287 U.S. 551, 557 (1933); Weaver v. Commissioner, 72 T.C. 594 (1979). Here, petitioner was clearly dependent on extraction for a return of his capital. He received payment only when Hartford removed dirt, sand and gravel from his land. The agreement provided for petitioner to receive 8 cents per ton of sand and gravel removed and 5 cents per ton of dirt removed. The only interest petitioner transferred was the right to extract and remove a limited quantity of dirt, sand and gravel for a limited period of time. See Rabiner v. Bacon, 373 F. 2d 537 (8th Cir. 1967). No minimum extraction was required. See Lesher v. Commissioner, 73 T.C. No. 32 (Nov. 27, 1979). In light of these facts, we conclude that petitioner did not divest himself of his economic interest in the minerals in place. Accordingly, the sale proceeds received by petitioner are ordinary income subject to a depletion allowance. Section 613(b)(6) allows a depletion deduction equal to five percent of the gross income from sales of sand *545 and gravel. Section 613(b)(7) allows a 14 percent depletion for sales of limestone under certain circumstances. Respondent allowed petitioner a depletion deduction for each of the years in issue equal to five percent of petitioner's sales of sand, gravel and rock. Petitioner contends that he is entitled to a greater depletion deduction than that allowed by respondent because part of his sales were limestone. However, petitioner did not present any evidence showing he made sales of limestone or that such sales were made under circumstances that would entitle petitioner to the 14 percent allowance under section 613(b)(7). [11] Accordingly, we sustain respondent's determination. Depreciation Deductions
Respondent determined that petitioner was not entitled to section 167 depreciation deductions of $2,994 claimed by petitioner in 1970, $3,434.90 claimed in 1971 and $3,934.90 claimed in 1972. Petitioner presented no evidence as to his basis in the assets for which he claimed depreciation, their *546 useful life, when the items were put into service or the amount of depreciation allowed or allowable in prior years. Accordingly, petitioner has failed to carry his burden of proof, Rule 142(a), Tax Court Rules of Practice and Procedure, and his claimed depreciation deductions in excess of the amount previously allowed by respondent are denied. Business Expenses
Petitioner claimed the $351 cost of a calculator purchased in 1971 as a section 162 business expense deduction. Respondent denied the deduction based upon his determination that the calculator was a depreciable asset having a ten-year useful life. [12] Petitioner did not present any evidence showing that the cost of the calculator was other than a capital expenditure. Accordingly, we sustain respondent's determination. Respondent also determined that petitioner was not entitled to Schedule F business expenses of $1,665 claimed in 1972. Petitioner presented no evidence as to these claimed deductions. Since petitioner has failed to carry his burden of proof, Rule 142(a), Tax Court Rules of *547 Practice and Procedure, his claimed deductions in excess of the amount previously allowed by respondent are denied. Decision will be entered for the respondent. Footnotes
1. Omaha Public Power District, a public corporation, is a public power district engaged in the light and power business within the meaning of Neb. Rev. Stat. sec. 70-601 et seq.↩
2. Petitioner incurred an additional $5,000 in unrelimbursed legal, appraisal and witness fees.↩
3. Iske v. Omaha Public Power District,185 Neb. 724, 178 N.E. 2d 633↩ (1970).
4. Respondent calculated unreimbursed expenses as follows: ↩
Legal, appraisal and witness
fees paid by petitioner
$50,000
Less: Fees awarded by court
(15,000)
Unreimbursed expense
$35,000
5. Petitioner claimed $1,291 of this amount as a business expense in 1971. Respondent disallowed this deduction, but included the $1,291 in the $15,128.85 used above to reduce the amount of the condemnation award.↩
6. Respondent allowed petitioner to deduct depreciation expense of $35.10 per year in 1971 and 1972.↩
7. The correct total is $15,464.↩
8. See also Rev. Rul. 59-121, 1959-1 C.B. 212, clarified by Rev. Rul. 68-291, 1968-1 C.B. 351↩.
9. Al statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
10. In support of his argument that the consideration received on the sale of his easements should be credited against the basis for his entire property, petitioner also cites Conway v. United States, an unreported case (W.D. Ky. 1973) 31 AFTR 2d 73-1028, 73-1029, 73-1 USTC par. 9318) and Bledsoe v. United States, an unreported case ( N.D. Okla. 1967, 20 AFTR 2d 5282, 5283, 67-2 USTC par. 9581). We have previously declined to follow the District Courts' holdings in Conway and Bledsoe and continue to do so here for the reasons mentioned in Fasken v. Commissioner,71 T.C. 650, 657↩, n. 4 (1979).
11. Petitioner also did not present evidence which would allow us to hold that he was entitled to cost depletion if it were greater than percentage depletion. See Sec. 613(a).↩
12. Respondent allowed petitioner section 167↩ depreciation deductions for 1971 and 1972 with respect to this asset.