Louis **RABINER** and Lena **Rabiner**,
Husband and Wife, Appellants,

v.

Ernest W. **BACON**, Director of Internal
Revenue, Appellee.

No. 18440.

United States Court of Appeals
Eighth Circuit.

March 6, 1967.

Donald L. Sturm, Omaha, Neb., for petitioners; John H. Mitchell and John J. Murray, Fort Dodge, Iowa, on the brief.

Thomas L. Stapleton, Attorney, Tax Division, Dept. of Justice, Washington, D. C., for appellee; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attorneys, Dept. of Justice, Washington, D. C., and Donald M. Statton, U. S. Atty., Des Moines, Iowa, on the brief.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

Appellants, taxpayer, brought suit in the District Court seeking refund of a portion of income taxes paid for the fiscal years 1960, 1961 and 1962.[1] Taxpayer contends that income derived from receipts of rents under a contract whereby Davis Brothers Construction Company could excavate sand, gravel and dirt from his property was treated as ordinary income, subject to depletion allowance, when said income should have been treated as capital gains. The document ran for five years and taxpayer's income from that property was solely dependent upon production during that period.

The District Court, The Honorable Roy L. Stephenson, in a memorandum opinion reported at 252 F.Supp. 825, held that taxpayer's income was derived from a lease agreement calling for removal of minerals rather than a sale of same, and that taxpayer thereby retained an economic interest in the mineral deposits; thus income derived therefrom

---

1. Lena Rabiner is a party appellant by virtue of having filed joint returns with her husband, Louis Rabiner for the years in question. We will refer to appellants as "taxpayer."

constituted ordinary income.[2] The District Court also held that the taxpayer was holding the minerals primarily for sale to customers in the ordinary course of business and for that additional reason his income therefrom was properly taxed as ordinary income.

Jurisdiction is conferred on this court by 28 U.S.C.A. § 1291. We affirm.

This case was tried to the District Court upon the pleadings, answers to interrogatories, stipulations and exhibits. There is no dispute concerning the facts.

In 1938 taxpayer bought a two hundred eighty acre farm, including forty-five acres containing sand and gravel deposits, from which taxpayer and Richard Paul began selling sand and gravel. This operation continued until 1942. Thereafter, taxpayer leased the property to various lessees for the purpose of removing sand, gravel and dirt by documents similar to the one with Davis Brothers Construction Company. Taxpayer first leased the property to Davis Brothers Construction Company in 1954 and then again in 1957 for a period extending through 1962. The contract was designated by the parties as a "Lease Contract" and referred to throughout as a lease. The contract is couched in simple language and is unambiguous. It described taxpayer's entire real property and the portion thereof leased to Davis Brothers "for the purpose of removing sand, gravel and dirt therefrom." It obligated Davis Brothers to pay "rent" at a fixed price per ton for the material removed. Aside from not requiring any minimum operation, it is a usual and simple form of mining lease designating the royalty as "rent"; the method of determining the tonnage; the requirement for keeping records; the place and time for payments; and the rights of entry and Davis Brothers' agreement not to interfere with farming operations. The agreement restricted Davis Brothers' rights in the premises to the removal of sand, gravel and dirt.

In our view, the sole issue here is controlled by the teachings of the Supreme Court commencing with the cases of Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932) and Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Sd. 489 (1933).[3] In *Burnet,* supra, the Supreme Court held that income of a lessor from a mineral lease was taxable as ordinary income and not as a gain from "sale" of capital assets. The opinion in *Burnet,* supra, described the purpose of the capital gains statute as affording relief to a taxpayer from the impact of taxation on a transaction involving sales of property usually held over a period of years. The Supreme Court pointed out that payments to lessors under mining leases were not a conversion of capital but constituted income like the payment of rent. It is singular to note that the document involved here describes the taxpayer's income as rent.

Palmer v. Bender, supra, first articulated the "economic interest" concept which doctrine has been recognized by the Supreme Court to the present time. Since *Palmer,* supra, it appears to

---

2. The trial court reached its conclusion by finding complete agreement with the opinion in Laudenslager v. Commissioner, 305 F.2d 686 (3rd Cir. 1962). There are, however, contrary precedents. See, e. g., Linehan v. Commissioner, 297 F.2d 276 (1st Cir. 1961).

3. Mr. Justice Stone, speaking for the Court in Burnet v. Harmel, stated:

"Moreover, the statute speaks of a 'sale,' and these leases would not generally be described as a 'sale' of the mineral content of the soil, using the term either in its technical sense or as it is commonly understood. Nor would the payments made by lessee to lessor generally be denominated the purchase price of the oil and gas. By virtue of the lease, the lessee acquires the privilege of exploiting the land for the production of oil and gas for a prescribed period; he may explore, drill, and produce oil and gas, if found. Such operations with respect to a mine have been said to resemble a manufacturing business carried on by the use of the soil, to which the passing of title of the minerals is but an incident, rather than a sale of the land or of any interest in it or in its mineral content. (Citing cases.)" 287 U.S. at page 107, 53 S.Ct. at page 75.

be settled law that in any mining agreement where a taxpayer retains an economic interest in minerals owned, the transaction should not be considered a sale entitling the owner to capital gains treatment, but as ordinary income subject to the statutory depletion allowance. For a later discussion by the Supreme Court on the "economic interest" concept, see Paragon Coal Co. v. Commissioner, 380 U.S. 624, 85 S.Ct. 1207, 14 L.Ed.2d 116 (1965). This case also approved the Treasury Regulation on the subject which provides:

"* * * An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the extraction of the mineral or severance of the timber, to which he must look for a return of his capital. * * *" Treas.Reg. § 1.611–1(b) (1).

There has been much litigation on this subject and a reading of the many cases indicates that it is not always easy to draw a distinction between a transaction constituting a sale of minerals and one which retains an economic interest in the minerals. We do not perceive any such difficult problem here, as certainly there is nothing in the "Lease Contract" between taxpayer and Davis Brothers to remotely suggest a sale of capital assets. We realize that the descriptive language of the document will not necessarily control the actual tax consequences which are properly determined by the substance rather than form of agreement. The transaction here was a lease for a five year period and taxpayer received income therefrom only upon the production of the mineral. The lease did not require any minimum production, yet in each of the years involved Davis Brothers did in fact mine the property and pay "rent" to taxpayer, and this is the income with which we are concerned.

Taxpayer contends "that there was no retention of an economic interest in the mineral deposits since the 'sales' price was not dependent upon the resale and/or price obtained by Davis Brothers for the minerals." The method of payment, however, is not dispositive of the question. Regardless of how payments were made, taxpayer's income here was derived solely from the extraction of the mineral and was geared to the production of the mineral. We think it can be safely said that taxpayer retained an economic interest in the subject minerals whether any were mined or not. He had an economic interest in the minerals mined by reason of income he received from the exploitation of his lands and the extraction of the minerals. In this way, he was compensated for the return of his capital by the depletion allowance rather than the capital assets gain provision which results from a sale of capital assets. Taxpayer's theory runs contra to the Treasury Regulation above cited as well as the decisions in Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325 (1932); Freund v. United States, 367 F.2d 776 (7th Cir. 1966); Laudenslager v. Commissioner, 305 F.2d 686 (3rd Cir. 1962); Albritton v. Commissioner, 248 F.2d 49 (5th Cir. 1957).

Taxpayer cites our case of Commissioner v. Remer, 260 F.2d 337 (8th Cir. 1958), as supporting his contention. There is no conflict, however, in our opinion in *Remer* and here because in *Remer* there was involved the actual sale of two stockpile iron ore mining leases. The document in *Remer* was in the language of an absolute sale under warrant of title and contained no provision retaining any interest in the property sold. We held there that this constituted a sale of the leases and that the profits resulting therefrom were entitled to capital gains treatment.

It would serve no purpose to attempt to distinguish or even discuss the many cases on the subject or to consider the subsidiary issue noted in the District Court's opinion, because we are convinced that the agreement here was in fact a lease not only by the descriptive

words used therein, but also as revealed by the substance of the transaction between the parties. In our view, taxpayer retained an economic interest in the minerals and *Burnet,* supra, controls.

The judgment of the District Court is affirmed.