**Erwin A. SCHREIBER and Clara Schreiber, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 16129.**

United States Court of Appeals Seventh Circuit.

July 17, 1967.

Louis L. Meldman, Robert E. Meldman, Milwaukee, Wis., for appellants.

Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Donald A. Statland, Lee A. Jackson, Grant W. Wiprud, Attys., Dept. of Justice, Washington, D. C., for appellee, James B. Brennan, U. S. Atty., Franklyn M. Gimbel, Asst. U. S. Atty., of counsel.

Before HASTINGS, Chief Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Taxpayers instituted this action for a refund of income taxes for the years 1959 through 1963. The issue is whether income received by taxpayers from quarrying operations conducted on their property constituted depletable ordinary income under a mineral lease or capital gains from a sale of the minerals in place.

Taxpayers own an 87-acre farm near Menominee Falls, Wisconsin. During the taxable years in question, they used this property for agricultural purposes. In July 1957, they entered into an agree-

ment with Merget Sand & Gravel Company ("Merget") concerning the excavation and removal of sand, stone and gravel from their farm. In this agreement, taxpayers granted Merget the exclusive right to remove such deposits from the farm for five years and also granted Merget a right to extend the term for another three years.

The agreement provided that taxpayers were to be compensated for the minerals removed from their land on the basis of 20 cents per cubic yard, to be paid monthly. The agreement provided for a minimum payment of $2,000 per year, and the maximum amount to be removed in any year was 150,000 cubic yards.

The 1957 agreement was described as a "lease" in four important respects:

1. Reserving the owners' right to use all the land for agricultural purposes until needed for use by Merget.
2. Providing a five-year term, with the three-year renewal right.
3. Granting the owners the right to terminate upon Merget's bankruptcy or insolvency.
4. Granting the owners the right to terminate in the event of any default by Merget.

In May 1963, taxpayers and Merget executed an identical agreement, except that in the second instrument "agreement" was used throughout in substitution of "lease".

At the time of execution of both the agreements, the extent of the sand, stone and gravel deposits on the farm had not been ascertained.

From 1959 through 1961, taxpayers reported the amounts received from Merget as ordinary income subject to a five percent depletion allowance. For 1962 and 1963, taxpayers reported this income as capital gains. Throughout all the tax years, Merget took royalty payment deductions for the amounts paid to taxpayers.

The District Court entered judgment for the Government, holding that the amounts in question were ordinary income to taxpayers.[1] In our view, the District Court's decision was correct.

■ In Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, the Supreme Court held that royalties paid under a mineral lease were depletable ordinary income rather than capital gain. In subsequent cases, the rule was articulated that if the owner has retained an economic interest in the minerals in place, the proceeds therefrom are taxable as ordinary income, subject to depletion, and not as capital gains.[2] Applying this test, taxpayers are only entitled to capital gains treatment if they have completely alienated their interest in the minerals in place.

■ Under the agreements in the present case, the payments to taxpayers depended upon the production of the minerals. Therefore, they retained an economic interest in the minerals in place and are precluded from treating the amounts received as capital gains. Wood v. United States, 377 F.2d 300 (5th Cir. 1967); Rabiner v. Bacon, 373 F.2d 537 (8th Cir. 1967); Laudenslager v. Commissioner of Internal Revenue, 305 F.2d 686 (3d Cir. 1962), certiorari denied, 371 U.S. 947, 83 S.Ct. 501, 9 L.Ed.2d 497. As in the *Laudenslager* case, here "there was no *sale* of the earth fill *in place;* taxpayers retained their economic interest in the earth fill prior to extraction" (305 F.2d at p. 692).

Most of taxpayers' contentions were advanced and rejected in this Court's

1. The District Court's opinion is reported in 262 F.Supp. 346 (E.D.Wis.1966).

2. For a discussion of the applicable principles, see Palmer v. Bender, 287 U.S. 551, 557, 53 S.Ct. 225, 77 L.Ed. 489; Thomas v. Perkins, 301 U.S. 655, 661, 57 S.Ct. 911, 81 L.Ed. 1324; Burton-Sutton Oil Co. v. Commissioner of Internal Revenue, 328 U.S. 25, 35–36, 66 S.Ct. 861, 90 L.Ed. 1062, 162 A.L.R. 827; Commissioner v. Southwest Exploration Co., 350 U.S. 308, 313–314, 76 S.Ct. 395, 100 L.Ed. 347; Parsons v. Smith, 359 U.S. 215, 221–222, 79 S.Ct. 656, 3 L.Ed.2d 747.

recent opinion in Freund v. United States, 367 F.2d 776 (7th Cir. 1966), adopting and applying the economic interest test to resolve this same problem. There it was decided that:

"The fact that in addition to payment measured by the quantity of the mineral extracted—an economic interest in production—a bonus is paid or a minimum payment is guaranteed does not suffice to negate the retained economic interest where, as here, income could be derived solely from production to make or offset the required payments, such income was intended to provide the source of such payments, and the deposits the transferee elects not to extract remain in the transferor. Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325; Kittle v. Commissioner, 21 T.C. 79, aff'd per curiam, 229 F.2d 313 (9th Cir.). In our opinion a guaranteed minimum payment coupled with payment meassured by production, like a lease bonus coupled with a royalty interest (Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489), is to be treated *in toto* as ordinary income."

Taxpayers argue that *Freund* should not apply because there the taxpayers had formerly been in the sand and gravel business, whereas these taxpayers have only been engaged in farming. The difference is of no significance because Freund had abandoned the sand and gravel business before entering the agreement in question. In that case and here, the mineral deposits were capital assets. The question there and here was identical, namely, whether the taxpayers sold those capital assets or retained an economic interest in them.

■ As in *Freund*, we conclude that the agreements between taxpayers and Merget constituted leases, with a retained economic interest remaining in the taxpayers, so that the income was subject to ordinary tax rates. In this connection, it is immaterial that the second agreement dropped any reference to

"lease", for the substance of the transaction is determinative; "the form of the agreement is not of itself determinative of the ultimate question here involved" (367 F.2d at p. 778). It is also immaterial that approximately 40 percent of the farm land was consumed during these years. Linehan v. Commissioner of Internal Revenue, 297 F.2d 276, 279 (1st Cir. 1961). The depletion allowance is of course some compensation for the consumption of this wasting asset.

■ We have reviewed the cases on which taxpayers rely. Some are dissimilar on their facts or have not been followed in later decisions. The remainder are not persuasive in view of the Supreme Court's economic interest test. Taxpayers concededly had the burden of establishing their qualification for capital gains treatment. We agree with the District Court that they have failed to carry this burden.

Affirmed.