396 F.2d 6
 68-1 USTC P 9402
 Melvin L. HAIR and Esther Hair, his wife, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Richard E. HAIR and Naomi L. Hair, his wife, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 22047, 22047-A.
 United States Court of Appeals Ninth Circuit.
 May 27, 1968.
 
 1
 Cameron Sherwood (argued), of Sherwood, Tugman & Green, Walla Walla, Wash., for appellant.
 
 
 2
 Grant W. Wiprud (argued), Meyer Rothwacks, Marian Halley, Attorneys, Department of Justice, Mitchell Rogovin, Asst. Atty. Gen., Tax Division, Lester Uretz, Chief Counsel, Internal Revenue Service, Washington, D.C., for appellee.
 
 
 3
 Before HAMLEY and ELY, Circuit Judges, and VON DER HEYDT,* District judge.
 
 OPINION
 
 4
 von der HEYDT, District Judge:
 
 
 5
 These cases, which have been consolidated, are petitions for review of decisions of the Tax Court affirming the Commissioner's assessment of deficiencies for the years 1962 and 1963. The facts are as follows.
 
 
 6
 Melvin and Richard Hair are brothers.[1] Both are engaged in farming. When their mother died each became the owner of an undivided one-half interest in certain lands. Some parts of these lands are suitable for farming; the rest is wasteland.
 
 
 7
 In 1962 taxpayers entered into an agreement with Curtis Construction Company. Curtis was a subcontractor on a dam project, and was to furnish all of the sand and gravel for a part of the dam. Test borings by Curtis had revealed large deposits of sand and gravel on taxpayers' property. The contract provided as follows:
 
 
 8
 That in consideration of the sum of Ten Dollars ($10.00), receipt of which is hereby acknowledged, and of the stipulations herein contained, and the payments to be made as hereinafter specified, the Seller hereby agrees to sell to the Purchaser, and the Purchaser hereby agrees to purchase from the Seller, the following: All of Sellers' right, title and interest in and to the sand and/or gravel situate upon the following described premises: This agreement shall remain in full force and effect for such time as shall be required to enable Purchaser to complete its contract with the Prime Contractor related to construction of Lower Monumental Dam on the Snake River under which contract Purchaser has agreed to furnish all sand and gravel for construction of the south shore portion of said Dam. It is estimated that performance of the said contract by Purchaser shall take approximately three (3) years from the date of this Agreement but that Purchaser shall, nevertheless, have the full time necessary to complete said contract. In the event of the abandonment of said contract by Purchaser, this contract shall be deemed terminated. Purchaser agrees to pay unto Seller Fifteen Cents (15cents) per cubic yard of sand and/or gravel removed from the said lands of Seller pursuant to this Agreement. * * *
 
 
 9
 From 1962 to 1964 Curtis removed quantities of sand and gravel. In 1964 it terminated the contract, pursuant to its terms, as its subcontract had been completed.
 
 
 10
 For 1962 and 1963 taxpayers reported the payments received from Curtis as income from the sale of a capital asset under Section 1221; i.e., as deferred payments from a sale in 1962 of the sand and gravel in place. The Commissioner determined that the payments constituted ordinary income, subject to five per cent depletion allowance, and assessed deficiencies. The Tax Court upheld the Commissioner, and these petitions followed.
 
 
 11
 Taxpayers contend that the agreement with Curtis was an absolute sale, and that they retained no economic interest in the sand and gravel which was removed. They conclude that the transaction involved the sale[2] of capital assets and the payments recived should be treated as capital gains. Taxpayers rely on Gowans v. Commissioner of Internal Revenue.[3] Respondent urges that Curtis was under no obligation to purchase any fixed quantity of sand and gravel for a specified total price, and that taxpayers retained an economic interest because they were dependent upon continued excavation for a return of capital.
 
 
 12
 The 'economic interest' test was first enunciated in Palmer v. Bender.[4] Briefly stated, Palmer holds that an economic interest is retained where (1) the owner has acquired, by investment, any interest in the mineral or natural deposit,[5] and (2) secures, by any form of legal relationship, income derived from the extraction of the mineral to which he must look for a return of his capital.[6] Gowans is one of many cases which has construed the second of these criteria. While Gowans held that an economic interest had not been retained, the Court expressly relied on three principal factors:
 
 
 13
 1) The principal purpose of the contract in question was to prepare the property for developement; exploitation of the sand deposits was a secondary interest. 2) The company had a firm obligation to remove all the sand, the location and amount of which had been determined with great accuracy. 3) Compensation was not made solely on a unit basis; substantial compensation was received which was completely unrelated to sand withdrawal.[7]
 
 
 14
 These factors are inapposite here. Taxpayers herein claim that under the contract Curtis was obligated to remove all the sand and gravel it needed to complete its subcontract. Assuming for purposes of discussion that this is true, it must be noted that no accurate determination of the amount of sand to be removed, or the total cost thereof, was made. There is no estimate of the amount of sand and gravel on taxpayers' land. It does not appear that either party ascertained what amount of these deposits Curtis would require. Nor can it be shown that Curtis would need all of the sand and gravel on taxpayers' land.
 
 
 15
 The Tax Court found that taxpayers retained a reversionary interest in any sand and gravel remaining after Curtis had fulfilled its subcontract. Taxpayers vigorously contend that there has been no proof that any commercially valuable sand and gravel remained. Taxpayers do not deny, however, either 1) that commercially valuable sand and gravel in fact remained, and 2) that the right to exploit any such remaining sand and gravel reverted to them. It cannot then be concluded that taxpayers sold Curtis either all or a predetermined amount of sand and gravel.
 
 
 16
 It is clear that the contract, as a whole, contemplated that Curtis might remove only such indeterminate amounts of materials as would be needed for its subcontract. For this, a monthly payment was made, the amount depending solely upon the amount of sand and gravel removed.[8] It is apparent that the factors relied on in Gowans are not present here.
 
 
 17
 Taxpayers assume the burden of establishing that they qualify for capital gains treatment.[9] In order to do so it must be demonstrated that they have not retained an economic interest in the sand and gravel.[10] Where, as here, taxpayers only substantive return of capital is dependent upon a unit price payment for an undetermined amount of sand and gravel, to be paid if, as, and when removed, they have retained an economic interest.[11]
 
 
 18
 Affirmed.
 
 
 
 *
 Hon. James A. von der Heydt, United States District Judge, Anchorage, Alaska, sitting by designation
 
 
 [1]
 Esther Hair and Naomi Hair are parties solely because they filed joint returns with their husbands. Richard Hair and Melvin Hair will hereafter be referred to as 'taxpayers'
 
 
 [2]
 It is axiomatic that the substance, rather than the form, of the agreement is controlling. E.g., Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277 (1940)
 
 
 [3]
 246 F.2d 448 (9th Cir. 1957)
 
 
 [4]
 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933). See Treas.Reg. 1.611-1(b)(1)
 
 
 [5]
 As noted in Gowans, this portion of the test assumes importance when a taxpayer claims proceeds of a transaction are regular income, but subject to the depletion allowance. 246 F.2d at 451, n. 4
 
 
 [6]
 287 U.S. at 557, 53 S.Ct. 225. See Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956)
 
 
 [7]
 246 F.2d at 451-452
 
 
 [8]
 This distinguishes this case from Crowell Land and Mineral Corp. v. Commissioner, 242 F.2d 864 (5th Cir. 1957), upon which taxpayers rely. See Albritton v. Commissioner of Internal Revenue, 248 F.2d 49 (5th Cir. 1957)
 
 
 [9]
 E.G., Schreiber v. United States, 382 F.2d 553 (7th Cir. 1967)
 
 
 [10]
 Palmer v. Bender, supra note 4; Commissioner of Internal Revenue v. Southwest Exploration Co., supra note 6
 
 
 [11]
 See Royalton Stone Corp. v. Commissioner of Internal Revenue, 379 F.2d 298 (2d Cir.), cert. denied, 389 U.S. 978, 88 S.Ct. 471, 19 L.Ed.2d 473 (1967); Wood v. United States, 377 F.2d 300 (5th Cir.), cert. denied, 389 U.S. 977, 88 S.Ct. 465, 19 L.Ed.2d 472 (1967); Rabiner v. Bacon, 373 F.2d 537 (8th Cir. 1967); Freund v. United States, 367 F.2d 776 (7th Cir. 1966); Laudenslager v. Commissioner of Internal Revenue, 305 F.2d 686 (3d Cir. 1962), cert. denied, 305 F.2d 947, 83 S.Ct. 501, 9 L.Ed.2d 497 (1963). But see, Wiseman v. Barby, 380 F.2d 121 (10th Cir. 1967), rev'd, 390 U.S. 339, 88 S.Ct. 1097, 19 L.Ed.2d 1218 (1968); Belknap v. United States, 278 F.Supp. 337 (W.D.Ky.1967)