WAYMAN A. COLLINS AND HELEN R. COLLINS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3973–69.   Filed August 12, 1971.

*Daniel S. Davisson,* for the petitioners.
*Frank E. Wrenick,* for the respondent.

IRWIN, *Judge:* Respondent determined the following deficiencies in petitioners' income tax for the calendar years 1964, 1965, and 1966:

| Year | Deficiency |
|------|-----------|
| 1964 | $1,893.44 |
| 1965 | 3,582.83 |
| 1966 | 2,174.41 |

The three deficiencies arise out of a single transaction, petitioners' sale of fill dirt from their land in 1964. The sole issue for determination is whether petitioners were entitled to report the gain from this sale as long-term capital gain by virtue of section 1231 of the Internal Revenue Code of 1954.[1]

FINDINGS OF FACT

Some of the facts have been stipulated by the parties and are incorporated herein along with exhibits attached thereto by this reference.

Petitioners are Wayman A. Collins and Helen R. Collins, husband and wife, who have resided in Yorktown, Ind., at all relevant times, and filed joint personal income tax returns with the regional commissioner of internal revenue at Indianapolis, Ind., for the years at issue. Hereafter petitioner will be used to refer to Wayman A. Collins.

During the years at issue, petitioner owned and farmed approximately 155 acres of land near Yorktown, Ind., for a period in excess of 6 months. Petitioner's only trade or business was farming.

Petitioner's land lay in the path of an interstate highway proposed by the State of Indiana, and sometime during or before 1963 the State notified petitioner of its need for part of his land. As a result of nego-

---

[1] All statutory references, unless otherwise specified, are to the Internal Revenue Code of 1954, as amended.

tiations with the State of Indiana petitioner sold the State 23½ acres of his property for the highway right-of-way in 1963.

Berns Construction Co. of Indianapolis (hereafter referred to as Berns) was successful bidder for the construction portion of the interstate highway in the vicinity of petitioner's property. In order to fulfill its needs for fill dirt for the project Berns approached petitioner. As a result of negotiations with Berns, petitioner entered into an agreement with Berns, the pertinent provisions of which are as follows:

1. The Sellers hereby agree to sell to the Buyer, and the Buyer agrees to buy from the Sellers, all earth and granular materials which the Buyer desires to excavate and remove from the locations hereinafter described, at the price of Ten Cents ($0.10) per cubic yard removed, as measured and determined by the Indiana State Highway Commission Project Engineer for aforesaid construction. The amount of earth and granular materials to be so removed shall be Five-Hundred Thousand (500,000) cubic yards more or less.

2. The Buyer has this day paid to the Sellers the sum of Five-Hundred Dollars ($500.00) as a part consideration for the execution of this agreement, the receipt of which the Sellers hereby acknowledge and which sum shall be credited on the payments hereinafter provided for to be made by the Buyer to the Sellers. Said payments for removal of aforementioned earth and granular materials shall be based on the total amount removed as ascertained by the Indiana State Highway Commission Project Engineer for aforesaid construction based on his cross sectional measurements of the bar pits. Twenty-Nine percent (29%) of the total payment so ascertained shall be paid by the Buyer to the Sellers during the year 1964, the remaining Seventy-One percent (71%) shall be paid by the Buyer to the Sellers in two equal installments in the years 1965 and 1966.

3. The Buyer hereby agrees to remove the top soil to the granular materials over an area of four (4) acres more or less to the west of the present pit and four (4) acres more or less to the east of the existing pit.

4. The Buyer hereby agrees to excavate and remove earth and granular materials from an area lying approximately between Stations 175+00 and 195+00 on the Indiana State Highway Commission drawings for aforesaid construction and a point approximately Nine-Hundred (900) feet east of the right-of-way of new Federal Highway I-69, to a depth of Twelve (12) feet if at all possible.

Berns removed 471,803 cubic yards of materials from petitioner's land pursuant to the agreement and paid petitioner $47,180.30 therefor. Petitioner reported his profit from the sale of $46,903.30 (respondent has not questioned petitioner's use of a $277 basis) as long-term capital gain on his 1964 return. Petitioner elected the installment method and reported his gain as follows:

| Year | Gain |
|------|------|
| 1964 | $13,601.96 |
| 1965 | 16,153.14 |
| 1966 | [1] 15,412.92 |

[1] Petitioner would have had to report $17,148.20 in 1966 so that the amount reported over 3 years would equal $46,903.30. Neither petitioner's return nor any other part of the record explains the discrepancy of $1,735.28, and respondent has not raised an issue with regard to it.

OPINION

In November 1963, petitioner entered into an agreement with Berns Construction Co. providing for the sale of fill dirt to Berns from certain areas of petitioner's land for use in a highway construction project. The agreement further provided that about 500,000 cubic yards of fill dirt were to be excavated by Berns and petitioner was to be paid $0.10 per cubic yard therefor. The exact amount excavated was to be determined at the highway construction site by an engineer employed by the State of Indiana. Petitioner reported the gain from the sale as long-term capital gain on his return for calendar year 1964 and elected the installment method to spread the gain over the 2 ensuing taxable years. The single issue to be decided is whether petitioner was entitled to treat his gain from the sale of fill dirt as long-term capital gain under section 1231.

The issue presented by this case has been before this and other courts on numerous occasions with results that at first glance might appear inconsistent. For example, in *Rabiner* v. *Bacon*, 373 F. 2d 537 (C.A. 8, 1967); *Royalton Stone Corporation* v. *Commissioner*, 379 F. 2d 298 (C.A. 2, 1967), affirming a Memorandum Opinion of this Court; and *Hair* v. *Commissioner*, 396 F. 2d 6 (C.A. 9, 1968), affirming a Memorandum Opinion of this Court, the taxpayers were required to report their profits from the sale of minerals located upon their lands as ordinary income. See also *Charles A. Linehan*, 35 T.C. 533 (1960), and *Samuel L. Green*, 35 T.C. 1065 (1961). On a number of occasions, however, taxpayers have successfully argued that their profits were long-term capital gain under section 1231. *Robert M. Dann*, 30 T.C. 499 (1958) *Crowell Land & Min. Corp.* v. *Commissioner*, 242 F. 2d 864 (C.A. 5, 1957), reversing 25 T.C. 223 (1955); and *Barker* v. *Commissioner*, 250 F. 2d 195 (C.A. 2, 1957), reversing 24 T.C. 1160 (1955). The differences in the results of these cases are not due to confusion regarding the proper rule of law to be applied; the courts have merely taken different views with respect to comparatively similar fact situations.

The genesis of the rule applied in these cases is *Burnet* v. *Harmel*, 287 U.S. 103 (1932), in which the Supreme Court held that royalties paid under a mineral lease were depletable ordinary income rather than capital gain. Later cases articulated the test that, if an owner retained an economic interest in the minerals in place on his land, the proceeds from the sale of the minerals were taxable as ordinary income and not as a capital gain. *Commissioner* v. *Southwest Expl. Co.*, 350 U.S. 308 (1956); *Laudenslager* v. *Commissioner*, 305 F. 2d 686 (C.A. 3, 1962). In the case of a seller of minerals in place the deter-

mination that he has retained an economic interest in the minerals turns upon whether he must look solely to the extraction of the minerals to recover his capital. *Rutledge* v. *United States*, 428 F. 2d 347, 351 (C.A. 5, 1970). In other words, if the agreement between the parties only imposes an obligation upon the buyer to pay the seller for minerals actually extracted and does not require that he extract all of the minerals within a certain area, the seller retains an economic interest in the minerals in place because his profit will depend upon their extraction.

After examining the agreement in this case and reviewing the record, we hold that petitioner did sell his entire interest in the fill dirt in place and did not retain any economic interest therein.

Respondent's argument that Berns was not obligated to remove any fill dirt under the agreement focuses upon the first numbered paragraph of the agreement:

1. The Sellers hereby agree to sell to the Buyer, and the Buyer agrees to buy from the Sellers, *all earth and granular materials which the Buyer desires to excavate* and remove from the locations hereinafter described, at the price of Ten Cents ($0.10) per cubic yard removed, as measured and determined by the Indiana State Highway Commission Project Engineer for aforesaid construction. The amount of earth and granular materials to be so removed shall be Five-Hundred Thousand (500,000) cubic yards more or less. [Emphasis supplied.]

Viewed alone, the italicized language creates the impression that the agreement merely grants the buyer the right to remove any dirt that he desires. If such were the case, petitioner would have to look solely to the extraction of the fill dirt for his profits, and these profits would be taxable as ordinary income.

Respondent's argument is, we believe, based upon a contorted construction of not only the italicized language but also the document as a whole. The agreement here is not artfully drawn, and the language relied upon by respondent appears to be merely descriptive of the intent of the parties. The last sentence of the first numbered paragraph is couched in clear obligatory language. This sentence in conjunction with the third and fourth numbered paragraphs of the document states with a proper degree of certainty the locations from which the fill dirt is to be excavated, the amount to be removed, and the price to be paid therefor. The facts that the amounts were stated in approximate terms and that payment was contingent upon a third party's measurement of the amount of dirt removed do not prevent the agreement from being a completed sale.

Taking everything in the record into consideration, we conclude that the parties intended that all the fill dirt located in the areas described in the agreement was to be removed by Berns and that peti-

tioner was to be paid therefor unconditionally. This conclusion makes the present case in all important factual respects similar to *Robert M. Dann, supra.* In *Dann* this Court additionally found that the excavated lands were unusable by the seller after the fill dirt was removed. Petitioner attempted to prove that his land was similarly unusable, but the evidence was inconclusive on this point. While a showing that the land was made unusable by the excavation would tend to prove that the seller intended to part with his whole interest in the fill dirt, the condition of the land after completion of the work is one of several factors to be considered and not a necessary one. Other factors noted in *Dann* are present in this case. The fill dirt removal was not a continuing operation but was completed in a short time, and the seller did not participate in the excavating operations. More importantly, the parties attempted to estimate the amount of fill dirt present, and they did not provide an escape clause from the obligation of Berns to pay for the dirt if it developed that the contractor could not use all or part of the dirt for any reason. The buyer's ability to back out of his obligation to purchase fill dirt was noted as strong evidence that the parties had not entered into a completed sale in *Hair* v. *Commissioner, supra,* and *Laudenslager* v. *Commissioner, supra.*

A further argument by respondent is that our position in *Robert M. Dann* has been rejected by the Seventh Circuit, in which appeal in this case would lie, in *Freund* v. *United States,* 367 F. 2d 776 (C.A. 7, 1966), and *Schreiber* v. *United States,* 382 F. 2d 553 (C.A. 7, 1967). We view these cases as distinguishable on their facts and as applying the same rules of law that we apply here. Hence our recent decision in *Jack E. Golsen,* 54 T.C. 742 (1970), does not require a decision against petitioner. The agreement in *Freund* was in the form of a lease for a specific term which did not set forth a reasonably specific amount of materials to be excavated. The District Court found as a matter of fact that the parties intended to create a lease rather than a sale, and Seventh Circuit accordingly affirmed. *Schreiber* involved two agreements covering a period of several years under which the excavator could within limits remove as much or as little gravel as he pleased. The landowner's recovery of his capital depended on those facts upon the extraction of the minerals, and the profits from their sale were properly taxable as ordinary income. In contrast to the situations that existed in *Freund* and *Schreiber* we find that the parties intended and agreed that all of the fill dirt within the areas described in the agreement be removed expeditiously.

Our holding that petitioner effected a completed sale of the fill dirt in place upon his land precludes the necessity of passing upon petitioner's alternative argument under section 1231 that the agreement

with Berns was entered into under threat or imminence of condemnation. In view of the foregoing we hold that respondent incorrectly determined a deficiency in petitioner's tax for the calendar years 1964, 1965, and 1966.

*Decision will be entered for the petitioners.*