RICHARD L. ELLIS AND EDNA MAY ELLIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1184–69. Filed August 12, 1971.

*Theodore A. Fitzgerald*, for the petitioners.
*Frank E. Wrenick*, for the respondent.

IRWIN, *Judge:* Respondent determined a deficiency in the amount of $1,466.34 in petitioners' income tax for the year 1965. Only $1,430.15 of the deficiency is in dispute and is attributable to petitioners' reporting the profit from the sale of fill dirt on their land as long-term capital gain.

### FINDINGS OF FACT

Some of the facts were stipulated. The stipulation, together with the exhibits therein identified and therewith admitted in evidence, is incorporated in these findings by this reference.

Petitioners are Richard L. Ellis and Edna May Ellis who are husband and wife and who at all relevant times resided in Hebron, Ind. For the calendar year 1965 they filed a joint personal income tax return with the regional commissioner of internal revenue at Indianapolis, Ind. Hereafter petitioner will refer to Richard L. Ellis.

Since 1948 petitioner has owned and operated a farm in Eagle Creek Township, Lake County, Ind. Prior to 1965 petitioner sold a portion of his land to the State of Indiana under threat of eminent domain proceedings. The State needed this portion of his land for use in an interstate highway project.

During 1965 petitioner was approached by J. C. O'Connor & Sons, Inc. (hereafter O'Connor), which desired to excavate fill dirt from the remaining parts of his land. O'Connor at that time was apparent low bidder for the construction portion of the new interstate highway adjoining petitioner's property.

On January 25, 1965, petitioner entered into an agreement with O'Connor which in salient part provided as follows:

WHEREAS, Buyer is apparent low bidder on Contract R 6600 for the construction of a portion of I-65 and will need fill materials in performance of said contract and Sellers own a tract of land in the vicinity of said highway, and

WHEREAS, Sellers and Buyer have agreed upon terms and conditions under which fill materials from Sellers' property shall be sold to Buyer and the parties hereto desire to reduce their agreement to writing for greater certainty,

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

1.

Sellers agree to sell to Buyer fill materials from Sellers' property as further described in attached sketch marked Exhibit "A" which is by reference incorporated herein and made a part hereof.

2.

It is agreed and understood that Sellers desire a pond to be formed where excavation of fill materials is made. Buyer agrees to excavate the pond to a minimum depth (average) of twelve (12) feet below the existing ground surface. Upon completion of the excavation, the area surrounding the pond shall be machine graded so as to leave it neat and in proper condition considering the purposes herein set out.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

4.

The fill materials to be excavated and purchased by the Buyer must meet Indiana State Highway Specifications and shall be approved by their engineers.

5.

Buyer agrees to pay Seven and one-half ($0.07½) Cents per cubic yard for fill materials excavated and removed as measured by the Indiana State Highway Commission's engineers. Payments will be made at such time that Buyer receives payments on engineers' semi-monthly and final estimates for that quantity of the material on such estimates that the engineers' records show have been removed from Sellers' property. Ten (10) percent of the amount due Sellers will be retained until Buyer receives final payment from the State of Indiana. All of the sums payable hereunder shall be payable without relief from valuation and appraisement laws and with attorney fees in event of nonpayment when due.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

11.

This agreement is contingent upon the Buyer receiving the official award of Contract R 6600 by the State Highway Commission of Indiana.

In due course O'Connor was awarded the construction contract by the State. In 1965 O'Connor removed fill materials from petitioner's land and constructed a pond as described in the agreement. O'Connor paid petitioner $14,870.65 for the fill dirt removed under the contract.

After deducting expenses of $35.65 which are not in dispute, petitioner reported his profit of $14,835 as long-term capital gain on his return for calendar year 1965.

OPINION

The issue in this case is identical to that in *Wayman A. Collins*, 56 T.C. 1074 (1971), which we have also decided this day. Although the facts of this case are relatively similar to those of *Collins*, significant differences exist which require a different result.

In 1965, after having sold a part of his farmland to the State of Indiana for use in a highway construction project, petitioner entered into an agreement with O'Connor, who was apparent low bidder for the job, which permitted it to excavate upon specified areas of petitioner's land for fill dirt. O'Connor, as consideration for the fill dirt, was to construct a pond upon the area excavated and pay petitioner $0.075 for every cubic yard of dirt removed. Petitioner received $14,870.65 under the agreement and reported his profits from the sale as long-term capital gain on his return for 1965. The sole issue for determination is whether petitioner should have reported this profit as ordinary income.

We noted in *Wayman A. Collins, supra*, that although the cases involving the sale of minerals or fill dirt reach apparently irreconcilable results they each apply the same rule of law. This rule is that the profits from the sale of minerals will be taxable as ordinary income unless the seller can prove that he parted with his entire interest in the minerals sold and that the recovery of his capital will not depend upon the extraction of the minerals from his land. *Burnet* v. *Harmel*, 287 U.S. 103 (1932); *Commissioner* v. *Southwest Expl. Co.*, 350 U.S. 308 (1956); *Rutledge* v. *United States*, 428 F. 2d 347, 351 (C.A. 5, 1970). Generally, the agreement between the parties must provide that all of the minerals or fill dirt be removed from designated areas and that the obligation of the purchaser to pay for all of the materials be unconditional.

After examining the agreement between petitioner and O'Connor and reviewing the entire record, we conclude that their agreement did not meet these requirements and that petitioner should have reported his profits from the sale of fill dirt as ordinary income.

At trial petitioner indicated that prior to entering into the agreement with O'Connor he sought legal advice about the proper method of obtaining capital gain treatment for his contemplated sale. Petitioner further stated that he intended to sell the fill dirt "in place," the term usually used to describe the sale of the entire interest in minerals. In view of these assertions it is surprising that the agreement in writing with O'Connor did not embody a sale of the fill dirt in place. Though this Court will take all factors into consideration in determining the exact nature of an agreement, petitioner's assertions cannot be recon-

ciled with the written agreement nor can they be made consistent with the third unnumbered paragraph of the instrument:

> WHEREAS, Sellers and Buyer have agreed upon terms and conditions under which fill materials from Sellers' property shall be sold to Buyer and the parties hereto desire to reduce their agreement to writing for greater certainty,

It is not likely that an advised taxpayer would have entered into this written agreement if it did not reflect his true intent.

Several circumstances indicate that the parties did not agree to a sale of the fill dirt in place. O'Connor's obligations were limited by the condition contained in numbered paragraph 4 *supra*, that the fill dirt removed meet the specifications of the Indiana Department of Highways. This limitation upon the buyer's duty to remove and pay for the dirt is similar in effect to that present in the agreement considered in our recent decision (*Estate of Marian H. Walker*, 55 T.C. 522 (1970)), where removal of the dirt was conditioned upon adequate market demand for the material. In *Walker* the contingency in the buyer's duty to excavate was considered a significant indication that the seller had to look to the extraction of the dirt to recover her capital. Cf. *Laudenslager* v. *Commissioner*, 305 F. 2d 686, 691–692 (C.A. 3, 1962).

Unlike the parties to the agreement in *Wayman A. Collins, supra*, petitioner and O'Connor did not attempt to estimate the amount of dirt to be removed either in their negotiations or written agreement. In light of the conditions noted above, it is difficult to understand how petitioner could have anticipated that any particular amount of dirt was to be removed. We conclude that under the agreement O'Connor could have extracted as much or as little dirt as he desired and petitioner could not complain. In this case, then, petitioner's opportunity to profit from the sale of dirt depended solely upon its extraction by O'Connor.

Petitioner suggests in his brief that because one of the purposes of the agreement was to provide his land with a pond and because the dimensions of the pond were incorporated in the instrument he sold in place the fill dirt that would have to be removed to create the pond described in the instrument. Paragraph 2 of the agreement, *supra*, does indicate that a pond will be constructed to an average minimum depth of 12 feet; however, no other part of the instrument requires that the pond meet other specified dimensions. That petitioner was to have a pond on his land after the completion of the excavation does not alter the result that the size of the pond as well as the size of petitioner's profit depended solely upon O'Connor's extraction of the dirt.

In view of the foregoing, we hold that petitioner did not part with his entire economic interest in the fill dirt and that his gain from the sale of the material should be taxable as ordinary income.

*Decision will be entered for the respondent.*