**ESTATE of Marian H. WALKER, Deceased, et al., Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE (three cases).**

**Nos. 71–1331 to 71–1333.**

United States Court of Appeals, Third Circuit.

Argued March 16, 1972.

Decided July 12, 1972.

Courtney H. Cummings, Jr., Killoran & Van Brunt, Wilmington, Del., for appellants.

Jane Edmisten, Department of Justice, Tax Division, Appellate Section, Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, David English Carmack, Attys., Tax Division, Department of Justice, Washington, D. C., for appellee.

Before MAX ROSENN and JAMES ROSEN, Circuit Judges, and VAN ARTSDALEN, District Judge.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

The sole issue of this appeal is whether the Tax Court erred in finding that Mrs. Walker and her estate received ordinary income from the sale of sand and gravel (fill) on her land.[1]

Appellant and the Government agree on the applicable principles of law. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932), held that mineral royalties paid under a lease were ordinary income to the taxpayer. However, if the minerals were sold outright, the taxpayer could take capital gain under the applicable provisions of the Internal Revenue Code, now embodied in 26 U.S.C. § 1231. Whether the necessary sale took place depended on whether the taxpayer had retained an economic interest in the minerals in place. A taxpayer retained such an interest if he had: (1) acquired by investment the interest in the minerals in place; and (2) looked to the extraction of the mineral for the return of his capital. Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 314, 76 S.Ct. 395, 100 L.Ed. 347 (1956). *See also*, Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933). In other words, the critical question that must be answered in determining the tax status of the income derived from the sale of the minerals is whether or not the taxpayer looks to payments dependent on extraction for his return. Rutledge v. United States, 428 F.2d 347, 351 (5th Cir. 1970). If the payments are not so conditioned capital gain accrues, Richard L. Ellis, 56 T.C. 1079 (1971); otherwise, ordinary income is generated. Dingman v. United States, 429 F.2d 70 (8th Cir. 1970); Laudenslager v. Commissioner of Internal Revenue, 305 F.2d 686 (3d Cir. 1962).

Where the parties differ in this case is in the evaluation of the particular contracts signed by the taxpayer, Mrs. Walker, and the contractors who removed the fill from her land. In 1922, Mrs. Walker and her husband purchased their farm, which they operated commercially until Mr. Walker's death in 1961. After the death, an appraiser evaluated the various uses to which the property could be put and concluded that the land, which fronted on a busy highway, could be valuable commercially. However, it would have to be graded before much of the area fronting on the road could be leased or sold.

In 1963, Mrs. Walker concluded an agreement with a contractor which provided that the contractor would grade part of her property and, as the grading progressed, purchase the fill he removed at sixteen cents a cubic yard. The relevant operative provisions of the contract stated:

1. Owner hereby retains the Contractor to grade the property of the Owner, described in Exhibit 'A' hereto, by removing fill dirt and other minerals therefrom, said grading operation, however, is subject to the following terms and conditions:

(a) All material removed by Contractor from the property described in Exhibit 'A' hereto shall become the property of the Contractor upon payment to Owner of the sum of Sixteen Cents (16¢) per cubic yard of material removed; said payment to be made on or before the Fifteenth day of each month for material removed for the preceding month, said payments to be made in accordance with the cross sectionings and measurements of the material removed made by or on behalf of Contractor;

(b) Grading and the removal of material shall start at the Southeasterly right-of-way line of Route No. 13 and proceed Southeasterly to the right-of-way line of the Pennsylvania Railroad Company; provided, however that the grading of that portion of said property extending Southeasterly from Route No. 13 to a distance of Four Hundred (400) feet shall be

---

1. The decision of the Tax Court is reported at 55 T.C. 522 (1970).

graded to an elevation of One (1) foot above Route No. 13 and such portion of said grading shall be completed by the Contractor during the 1963 calendar year.

\*　\*　\*　\*　\*　\*

(h) Contractor shall have the right at all times to stock pile top soil and other materials upon any portion of the property shown on Exhibit 'A' hereto until such time as said top soil is to be restored and/or such material is sold by Contractor for construction or other purposes;

Two further provisions of the contract provided that the contractor would amesite a driveway on the farm and that he would have an option to grade and remove the fill on the rest of the property at eighteen cents (18¢) a cubic yard for the first million cubic yards removed and at twenty cents (20¢) a cubic yard thereafter.

The work began, the driveway was amesited, and the fill removed. The Zoning Commission of New Castle County inquired whether there was a commercial sand pit on the property, but taxpayer's counsel wrote back that taxpayer was simply having her property graded. The matter was not further pursued.

In 1965, an amendment to the original agreement was signed, providing for the contractor to grade additional parts of the farm. While it incorporated most of the provisions of the 1963 agreement, it added the following language:

Contractor agrees to grade said additional property of the Owner as described in Exhibit 'A' hereto, all in accordance with this Agreement and in accordance with the provisions of said agreement dated March 18, 1963, and to complete such grading operations within a reasonable time, due allowance to be made for delays occasioned by strikes, weather, equipment shortages, acts of God, *lack of demand or market for fill or other minerals to be removed from said additional property of the Owner described in Exhibit 'A' hereto*, or for other causes beyond the Contractor's reasonable control. (Emphasis supplied).

After the taxpayer's death in October, 1966 her children agreed to the grading of the remaining 2.1 acres of the property under an oral agreement presumably incorporating the terms of the prior agreements. As of the time of trial, the grading of the second and third sections had as yet to be completed, and no rezoning or commercial development had been attempted.

When the taxpayer and her estate claimed capital gains on the income from the sale of the fill, the Commissioner responded by claiming it was ordinary income and offering the taxpayer a 5% depletion allowance.[2]

■ In deciding whether the taxpayer has sold or merely leased the mineral interest involved, each case must be evaluated on its facts. Wood v. United States, 377 F.2d 300 (5th Cir. 1967). While such a case by case approach may make for certain fine distinctions, if not contradictions, in the relevant body of case law,[3] the operative provisions of the 1963 and 1965 contracts in this case support the conclusion that Mrs. Walker and her estate retained the requisite interest in the sand and gravel until its extraction so that the money generated from their removal was ordinary

---

2. The Commissioner determined the following deficiencies in the income tax of Mrs. Walker, and following her death, that of her estate:

| | |
|---|---|
| 1963 | $ 4,482.56 |
| 1964 | 6,067.82 |
| 1965 | 11,816.43 |

| | |
|---|---|
| 1/1/66–10/3/66 | 8,398.64 |
| 10/3/66–12/31/66 | 3,857.62 |

3. *Compare* Richard L. Ellis, 56 T.C. 1079 (1971) *with* Wayman A. Collins, 56 T.C. 1074 (1971). *See generally*, Wood v. United States, 377 F.2d 300 (5th Cir. 1967).

income within the contemplation of Burnet v. Harmel, supra.

The taxpayer argues that once the contractor signed the contract he was compelled to remove all the fill as part of his obligation to grade the property.[4] Appellant concludes that this obligation was effectively a passing of all Mrs. Walker's interests in the material, and that she was at that point assured of compensation.

However, we find that the taxpayer was entirely dependent on the actual extraction of the fill for her repayment.[5] The contract states that the material would become the property of the contractor only upon the payment of sixteen cents (or eighteen cents) per cubic yard, and those payments were not due until the fill was taken from the property.

▪ The taxpayer argues that Mrs. Walker was assured of payment for all the materials because the grading had to be done within a reasonable time. However, with the exception of one section of grading, there was no specific completion date set in any part of the contract. There is not even a provision in the original agreement requiring the job to be completed within a reasonable time. Even if that were the case, the requirement that the job be completed within some period is not sufficient to undermine the lease-type terms, which do not give the contractor any interest in the fill until he removes it from the property.[6]

Further, the 1965 contract clarifies the fact that the taxpayer did not make an outright sale of her mineral interest, but only agreed to sell fill as it was extracted. In this later agreement the contractor and taxpayer agreed that if there was not a demand or market for the fill, it need not be removed. This condition substantially undercuts the contention that there was an outright sale, for it leaves the risk of non-production on the taxpayer. Similar conditions have recently compelled two other courts of appeals to conclude that there was a retention of an economic interest in minerals in place, Dingman v. United States, supra; Rutledge v. United States, 428 F.2d 347 (5th Cir. 1970),[7] and an analogous conditional contract was the basis of our holding in Lauden-

---

4. This element of taxpayer's theory is developed largely on the reasoning in Linehan v. Commissioner of Internal Revenue, 297 F.2d 276 (1st Cir. 1961), and Gowans v. Commissioner of Internal Revenue, 246 F.2d 448 (9th Cir. 1957). However, in both cases, the courts of appeals noted various factors which argued in favor of the taxpayers' positions, of which the required removal was only one.

5. The small in-kind and unconditional payment of amesiting the driveway does not negate a finding of a retained economic interest in the minerals in place. Freund v. United States, 367 F.2d 776 (7th Cir. 1966).

6. The tenuousness of taxpayer's position becomes clearer if we assess the possibility of the contractor's claiming that he had a sufficient economic interest in the material in place to claim the 5% depletion allowance. Under these agreements, the contractor has not met the requirement of Commissioner of Internal Revenue v.

Southwest Exploration Co., 350 U.S. 308, 314, 76 S.Ct. 395, 100 L.Ed. 347 (1956), that he have acquired by investment an interest in the minerals in place. He has not paid for the minerals, and he is not obligated to pay for them until he removes them. See, e. g., Constantino v. Commissioner of Internal Revenue, 445 F.2d 405 (3d Cir. 1971); Whitmer v. Commissioner of Internal Revenue, 443 F.2d 170 (3d Cir. 1971).

7. In Dingman v. United States there was a condition that the material had to meet the approval of the state highway commission. The court of appeals concluded this factor negated an outright sale in spite of the requirement in the contract that 400,000 cubic yards of sand be removed. Rutledge v. United States found that there was no sale of sand in place because there was no obligation to remove all the sand, which could be extracted as the contractor desired.

slager v. Commissioner of Internal Revenue, supra,[8] that the taxpayer had generated ordinary income.[9]

Finally, taxpayer argues that because the land was being developed for valuable commercial use, she was not going to receive all of her return on capital from the extraction of the minerals. The argument is based on Gowans v. Commissioner of Internal Revenue, 246 F.2d 448 (9th Cir. 1957), which found one reason for concluding that there had been a sale of fill in place was the taxpayer's desire to have the land graded for a housing development. But the scope of that decision has subsequently been limited in the Ninth Circuit to its unique set of facts. Alkire v. Riddell, 397 F.2d 779 (9th Cir. 1968), Hair v. Commissioner of Internal Revenue, 396 F.2d 6 (9th Cir. 1968). In any case, it is also distinguishable because another factor which the Ninth Circuit considered significant, and which we believe is determinative, was the assumption by the buyer of a considerable sum of the seller's debts regardless of any extraction.

Regardless of *Gowan's* value as precedent, the argument that the land was to be developed for commercial use is irrelevant in considering whether or not a taxpayer has retained an interest in the minerals in place. The purpose of ascertaining if a taxpayer is looking solely to the extraction of minerals for a return of his capital is to establish whether or not there has been a sale or lease of the mineral interest in the property. Income that does not result from the sale or lease of the interest has no bearing on whether the contract was signed. Samuel L. Green v. Commissioner of Internal Revenue, 35 T.C. 1065 (1961).

These facts are distinguishable from the two Tax Court decisions which lend most support to taxpayer's position. Wayman A. Collins, 56 T.C. 1074 (1971), permitted a taxpayer capital gains treatment on the sale of fill under a contract whose major price term was based on a payment per cubic yard of material removed. However, the contract stated that approximately 500,000 cubic yards of material were to be removed, and *full* payment was to be made in three installments over a three year period. Therefore, in spite of the payments being dependent on extraction, the contract could reasonably be read as requiring unconditional payment for approximately 500,000 cubic yards by a fixed date three years after the contract was signed. No such payments, which were potentially unrelated to extraction, or which required extraction by a certain date, are involved in the present case.

Robert M. Dann, 30 T.C. 499 (1958), presents almost the same facts as those presently before us—with one significant difference. The removal of the fill from the farmland made the property unusable. Unlike Mrs. Walker's land, which supposedly has increased considerably in value because of the grading, Dann's contract was in effect a disposal of all interest in the fee. The Tax Court considered such a result as a strong indication that there was no retained interest in any land which was used for fill. No such conditions exist in the present case.

The decision of the Tax Court will be affirmed.

---

8. Laudenslager v. Commissioner of Internal Revenue held that ordinary income was generated under a contract which called for a minimum removal of 400,000 cubic yards of dirt because the removal was conditioned on the approval of the material by the New Jersey Highway Authority.

9. See also, Schreiber v. United States, 382 F.2d 553 (7th Cir. 1967); Rabiner v. Bacon, 373 F.2d 537 (8th Cir. 1967); Freund v. United States, 367 F.2d 776 (7th Cir. 1966); Samuel L. Green v. Commissioner of Internal Revenue, 35 T.C. 1065 (1961).